587 So.2d 409 (1991)
Joe Amos KENT
v.
Donna Jo KENT.
2900334.
Court of Civil Appeals of Alabama.
August 30, 1991.
*410 Sherry Collum-Butler of Potts & Young, Florence, for appellant.
William M. Bouldin of Guin, Bouldin & Alexander, Russellville, for appellee.
RUSSELL, Judge.
This case concerns post-divorce proceedings involving the payment of post-minority support for college education.
The parties were divorced in 1973. The mother was awarded custody of the parties' minor son, and the father was ordered to pay child support. In August 1990 the mother filed a petition for modification, requesting that the father be required to bear the cost of the college education of the parties' son beyond the son's age of majority.
Following an ore tenus proceeding held in January 1991, the trial court ordered that the father shall be responsible for tuition and books while the parties' son is enrolled as an undergraduate student in any institution of higher learning. In addition, the father was ordered to pay $88 per week to the mother for the same period of time. The father appeals from this order and asserts that it was error for the trial court to require him to pay post-minority support for his son's college education.
In Ex parte Bayliss, 550 So.2d 986 (Ala. 1989), our supreme court broadened the equity powers of Alabama courts to provide that when a marriage has been terminated by divorce, the duty of parents to support and educate their children may extend beyond the age of majority. The court set out certain factors for consideration by the trial court when determining the appropriateness of post-minority support for college education. It directed that the trial court consider "all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education." Id. at 987 (emphasis in original). The court suggested that trial courts also consider "the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the *411 child's relationship with his parents and responsiveness to parental advice and guidance." Id.
We note initially that where, as in this matter, evidence is presented ore tenus, the trial court's judgment is presumed correct unless it is so unsupported by the evidence that it is plainly and palpably wrong. Coby v. Coby, 489 So.2d 597 (Ala. Civ.App.1986). Matters concerning child support are within the trial court's discretion, and its judgment will be reversed only if it has abused its discretion or if its determination is plainly and palpably wrong. Brannon v. Brannon, 477 So.2d 445 (Ala.Civ.App.1985).
The record reveals that the father has remarried and lives with his wife and two children who are products of the present marriage. He is an hourly worker for a tire manufacturer in Huntsville, and at the time of the trial, he was earning $15.70 per hour with time-and-a-half pay for overtime. He has earned over $30,000 per year for three years in a row, and his earnings for 1989, after working a considerable amount of overtime, were $47,000. He testified that his employer has suffered business losses within the past year and that severe cutbacks are expected at the plant where he works. He stated at trial on January 19, 1991, that he has worked only one full 40-hour week since late 1990.
The record shows that the mother's income was approximately $14,500 in 1988 and $9,800 in 1989. She testified that since 1980 she has received $36 per week in child support from the father.
The son testified that he graduated from high school in the spring of 1990 with a grade-point average of 3.2 on a 4.0 scale. During his senior year he worked 30 hours per week at a dairy, and at the time of the trial, he continued to work there part-time. In the fall of 1990, he entered Northwest Alabama Community College (Northwest), a state junior college. He attended Northwest for one quarter and was enrolled in four courses, completing three and dropping one while earning a 2.2 grade-point average. Testimony indicated that tuition at Northwest is approximately $300 per quarter, while total expenses, including books, were estimated to be $500 every quarter. The son, who received financial aid from a Pell Grant while attending Northwest, testified that he wants to attend college and that, except for his inability to pay tuition, he is eligible to attend next quarter's classes at Northwest.
Bayliss clearly specifies those factors that shall, and those that may, be considered by the trial court in awarding support for post-minority college education. The father contends that the trial court erred in granting post-minority support because, he claims, its decision is contrary to the standards set out in Bayliss.
As established in Bayliss, a primary factor to be considered by the trial court is the financial resources of the parents. As to the father, we find that his financial history indicates an ability to assist, at least in a limited way, in his son's college education. While the father testified about a possible precipitous drop in his income that may result from impending cutbacks by his employer, the impact of such cutbacks, if it does affect the father's wages, is not yet before us. In considering the comparative financial resources of the parties, we note that the mother's income is substantially lower than the father's. The mother testified that she has no present savings.
The trial court must next consider the child's commitment to, and aptitude for, the requested education. We find that aptitude means an ability to comprehend the course subject matter in such a way as to make at least average grades upon examination. The son's high school grades clearly evidenced his aptitude for a college education. However, after one quarter at Northwest, he has demonstrated only a marginal commitment to, and aptitude for, the requested education, and this is a matter of at least some concern. He earned an "A" in an introductory course in computers and "Cs" in English and mathematics; he dropped a biology class, finishing his first quarter with a cumulative average of a low "C." We are unable to determine from the *412 record why he dropped the biology class and whether he was passing at the time. There was no indication at trial of any circumstances that might have created special hardships for the son during his first quarter at Northwest. We must note, however, that we recognize that the adjustment from high school to college is frequently difficult at first and that a student's initial efforts in his college course work are often not indicative of the academic success he might later experience.
The record shows that neither the father nor the mother has a college degree. The father contends that if the parties had remained married, the son also would not have attended college and that, therefore, the trial court should not have ordered college support. As to this contention, we say that although this is a criterion that may be considered by the trial court, it is not the primary factor and does not necessarily preclude the trial court's ordering payment of support. See Bayliss, 550 So.2d 986.
The supreme court in Bayliss directed that the trial court may also consider the child's relationship with his parents and his responsiveness to their advice and guidance. The record indicates that the son's relationship with his father is strained. He has visited his father only twice in 13 years and, except for one occasion, has declined several invitations to join his father on vacations. The mother testified that the father has continued to send gifts to the son at Christmas and on his birthday, but according to the father, the son does not acknowledge him at these times. The father maintains that neither the son nor the mother consulted with him regarding the son's college education and that he was unaware that the son had enrolled at Northwest until the mother filed her petition for modification. Essentially, the father appears to have no relationship with or guidance or control over the son.
In Thrasher v. Wilburn, 574 So.2d 839 (Ala.Civ.App.1990), this court supplemented Bayliss's criteria for post-minority support by stating that evidence has to be presented to the trial court to show that the sums required to be paid would not cause the parent "undue hardship." We further noted at that time that "undue hardship" does not mean "without any personal sacrifice. Most parents who send their children to college sacrifice to do so." Id. at 841.
After careful review of the record and due consideration of the principles established in Bayliss and Thrasher, it is our opinion that in spite of sincere effort the trial court in the present case erred in ordering the father to pay for the son's tuition and books, as well as $88 per week to the mother, for as long as the son "remains enrolled as an undergraduate student in any institution of higher learning." We find that the possibility of "undue hardship," as defined in Thrasher, exists under such an unlimited order. Although the son testified that he intended to attend Northwest, and evidence of the costs at that college was presented at trial, the trial court ordered that the father was to make payments while the son attended "any institution of higher learning." Perhaps the trial court considered the cost at Northwest when issuing its order; however, as it is worded, the order would require the father to pay the son's tuition at even a costly private institution, regardless of the father's financial resources, the son's aptitude for and commitment to the requested education, and the father's lack of input in the college selection process.
Although we find that the father currently has the wherewithal to assist in some manner in his son's college education, we also find that the trial court's order, as it is written, is too open-ended and potentially financially oppressive. As we have indicated, the son has demonstrated only marginal commitment to and aptitude for college after one quarter at Northwest, having dropped one of four classes he was enrolled in and finishing with a cumulative average of a low "C." The trial court's order contains no requirements as to the minimum number of courses the son must take each term, nor does it limit the number of courses the son may drop or fail and still expect support from the father. At trial the son indicated that he felt his father *413 should pay for his college education for as long as it takes him to finish. Again, we note that the evidence indicates that the manner in which the son chooses to pursue his degree is something in which the father would effectively have no voice. While we recognize that the requirements for a full course load differ from school to school, there is nothing in the order as it is written to prevent the son from taking only one or two classes each term and prolonging his undergraduate career, as well as the father's financial obligation, for well beyond four years.
Based on the particular facts of this case, we reverse and remand for the trial court to enter an order to set a reasonable time limitation on the father's responsibility for post-minority college support. Such an order should provide reasonable time limits for the son's completion of junior college, as well as for his attainment of a "four-year" college degree. Additionally, the trial court should condition the father's support obligation upon the son's maintenance of a "C" average and full-time student status while in college.
As further guidance for the trial court, we suggest that for each term the son is enrolled as a full-time student in a junior college, subject to the conditions we have outlined, the father should be required to pay support in an amount equal to no more than 60% of the cost of tuition, books, and necessary fees for an equivalent college term at Northwest Alabama Community College. Likewise, for each term that the son is enrolled as a full-time student in a four-year college (also subject to the conditions we have outlined), the father should be required to pay support in an amount equal to no more than 60% of the cost of tuition, books, and necessary fees for any state-supported four-year college in Alabama.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THIGPEN, J., concurs.
ROBERTSON, P.J., concurs in part and dissents in part.
ROBERTSON, Presiding Judge, concurring in part and dissenting in part.
I concur in the reversal of this case; however, I would reverse on the basis that the facts here do not meet the standards set out in Bayliss. Also, as Justice Almon wrote in a "concurring in the result" opinion in Ex parte Barnard, 581 So.2d 489, 489 (Ala.1991), concerning the problems with the Bayliss decision that
"[o]ther inherent problems include the questions of how good a student a child has to be in order to be entitled to support under Bayliss; whether a child should be awarded support to attend a trade or technical school; whether such support can be awarded for post-graduate or professional studies; and at what age the parent's obligation terminates."
This seems to be one of those cases.