Mitchell Glen Thompson and Diane Thompson were divorced by a judgment of the Dale County Circuit Court on January 11, 1979. The mother was awarded custody of the parties' twin minor daughters and the father was awarded certain visitation privileges. The father was ordered, among other things, to pay child support. Thereafter, the father's child support obligation was modified on two occasions; the last modification increased the father's child support obligation to $860 per month.
On April 25, 1995, the mother filed a petition requesting the trial court to order the father to pay post-minority educational support. On July 5, 1995, the father answered, asserting that post-minority educational support would cause him undue hardship, that the daughters lacked the aptitude for obtaining college educations, and that the daughters had shown no commitment to obtaining college degrees. *Page 887 
Following an ore tenus proceeding, the trial court entered a judgment, stating in pertinent part:
 "1. That the father and the mother shall contribute to the post-minority educational expenses and support of [the daughters] in accordance with their percentage of income in accordance with the Child Support Guidelines.
 "2. That the parents shall pay tuition, room and board, books and associated fees, less any grants or scholarships obtained. The parents and the [daughters] shall take advantage of any scholarships or grants available.
 "3. That the cost and expenses shall be based upon a resident of the State of Alabama's costs to attend a public state-supported institution of higher learning.
 "4. That for the parents to be obligated, the [daughters] should be attending an accredited institution as a full-time student, carrying the required load and maintaining such grades as to be in good standing with the institution.
 "5. That all post-minority educational expenses and support are subject to further orders of the Court, based upon the cost involved, ability of the parents to pay, and the scholastic aptitude and performance of the [daughters].
". . . .
 "7. That the parties shall agree on a monthly allowance to cover incidental expenses such as transportation, cosmetics, grooming, hygiene, clothing, entertainment, etc."
The trial court made the father's payment of post-minority educational support retroactive to April 26, 1995.
Thereafter, the mother moved for a reference hearing to determine the amount of the monthly allowance. The father filed an objection to the mother's request for a reference hearing; the trial court granted the mother's request, and ordered the circuit clerk to hold a reference hearing to determine the amount of the monthly allowance. Following a reference hearing, the circuit clerk submitted a report to the trial court recommending that the father pay $500 per month per daughter for "ordinary and necessary living expenses." Thereafter, the trial court entered an order confirming the circuit clerk's report.
The father appeals, contending that one of the daughters does not possess the aptitude and commitment for a college education; that the award of post-minority educational support would cause him undue hardship; that the trial court erred in ordering him to pay $500 per month per daughter for their "ordinary and necessary living expenses"; that the trial court erred in applying the child support guideline percentages to post-minority educational support; that the trial court erred by failing to place temporal restrictions on his continued payment of post-minority educational support; and that the trial court erred in ordering him to pay post-minority educational support retroactive to April 26, 1995.
In order for a trial court to award post-minority educational support for a child of divorced parents, it "shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education." Ex parte Bayliss, 550 So.2d 986, 987
(Ala. 1989) (emphasis in original).
 I. Aptitude
The father argues that one of the daughters lacks the commitment to and the aptitude for a college education. A child's commitment to and aptitude for a college education are factors a trial court must consider in determining whether to award post-minority educational support. Ex parte Bayliss,supra. This court has held that "aptitude means an ability to comprehend the course subject matter in such a way as to make at least average grades upon examination." Kent v. Kent,587 So.2d 409, 411 (Ala.Civ.App. 1991). The daughter's high school grades evidence an aptitude for college; however, she had problems with mathematics courses during high school. Both parents testified that they knew that the daughter had problems in those courses and that she had worked to overcome her *Page 888 
problems. After one quarter at a community college, the daughter had demonstrated a marginal commitment to and aptitude for the requested education. The daughter had taken three remedial classes, in which she had made two B's and one F. The mother testified that the daughter has specific problems with mathematics and that the F the daughter had received in college was in a mathematics course.
In Kent, supra, because of the son's marginal commitment to and aptitude for college, this court instructed the trial court to place academic restrictions on the son for the father's continued obligation to pay post-minority educational support. In this present case, likewise, on remand the trial court is instructed to place academic restrictions on the daughter for the father's continued obligation to pay post-minority educational support.
 II. Undue Hardship
The father next argues that the trial court failed to determine whether ordering him to pay post-minority educational support would be an undue hardship on him. The trial court ordered the father to pay a percentage of the daughters' tuition, books, room and board, and fees, plus $1,000 per month for the daughters' "ordinary and necessary expenses."
In Thrasher v. Wilburn, 574 So.2d 839 (Ala.Civ.App. 1990), this court held that a parent has a legal duty to provide, or to aid in providing, a college education if the child demonstrates the ability and willingness to attain a higher education and the parent has a sufficient estate, earning capacity, or income to provide financial assistance without undue hardship. In Bayliss v. Bayliss, 575 So.2d 1117
(Ala.Civ.App. 1990) (Bayliss II), this court held that it was not an abuse of discretion for the trial court to order the father to pay an amount equivalent to room, board, books, tuition, and necessary fees at Auburn University, a public university, in the situation of a son attending a private college and with his father excluded from the son's college selection.
This court has held that without legal evidence as to the amounts required for books and tuition or for actual costs of room and board, we cannot determine whether the sums required to be paid by the father for post-minority educational support would cause him undue hardship. Thrasher, supra. The record reflects that the daughters had attended four quarters at a community college and that both of them intended to transfer to a four-year college in order to obtain bachelor's degrees. However, the record reflects that one of the daughters is not eligible to transfer to a four-year college unless she increases her composite score on the A.C.T. test. At the time of the proceeding, the other daughter had been accepted as a transfer student at two four-year colleges, but she had not chosen the college to which she would transfer.
The record indicates the costs of each daughter's tuition and fees for attending one quarter at the community college; however, it contains no evidence of the cost of the three additional quarters of tuition and books for which the mother sought reimbursement, nor does it contain any evidence regarding the cost of the daughters' books. The record does indicate the costs of tuition, books, and room and board for the two four-year colleges to which one of the daughters has been accepted.
Additionally, the father testified that he has remarried and that he and his current wife have two small sons. He testified that his current wife does not work; that she also attends a community college; and that she receives a partial grant to pay for her college expenses. The father further testified that he is a career military officer, that he has not been selected for a "class promotion," and that if he is not selected for the next "class promotion" he will be involuntarily retired.
The trial court ordered the father and the mother to contribute to the post-minority educational support of the daughters "in accordance with their percentage share of income in accordance with the Child Support Guidelines." However, the trial court did not state whether the father's percentage share of the daughters' post-minority educational support was based on the percentage of child support he was paying when the wife filed the petition for post-minority educational *Page 889 
support or on the percentage he was paying when the judgment was entered. We cannot determine the amount the father is to pay for post-minority educational support, whether that amount is reasonable, or whether the post-minority educational support would be an undue hardship to the father. Therefore, we must conclude that the trial court erred by failing to set a specific amount for the father's post-minority educational support and by failing to determine whether that amount would be an undue hardship.
Additionally, the trial court also ordered the father to pay $500 per month per daughter for "ordinary and necessary living expenses." The father argues that the trial court erred in ordering him to pay the daughters a monthly allowance. InBayliss II, this court affirmed the trial court's judgment ordering the father to pay the son's room, board, books, tuition, and necessary fees. Each of those expenses was directly related to the child's college education. Additionally, one of the Bayliss factors to be considered in the award of post-minority educational support is the financial resources of the children. We note that, while attending college, both of the daughters had used money they had earned from part-time and summer jobs to pay their expenses.
After carefully reviewing the record, we conclude that the $500 per month awarded to each of the daughters was not directly related to the daughters' college educations, but included a clothing allowance, an entertainment allowance, and other such allowances. Consequently, the trial court erred in ordering the father to pay each of the daughters' $500 per month for their "ordinary and necessary living expenses."
 III. Child Support Guidelines
The father further argues that the trial court erred in applying the child support guidelines in determining the amount of his post-minority educational support obligation. InThrasher, this court held that "the child support guidelines for a minor child are not applicable to the determination of an amount for providing or contributing to college expenses after the child reaches the age of majority." Thrasher, 574 So.2d at 841-42. Accordingly, we conclude that the trial court erred in applying the child support guidelines in determining the amount of the father's contribution to the daughters' college expenses.
 IV. Temporal Restrictions
The father also argues that the trial court erred by not placing temporal restrictions on his continued payment of post-minority educational support. In Kent v. Kent,587 So.2d 409, 410 (Ala.Civ.App. 1991), this court reversed the judgment of the trial court, which required a parent to pay post-minority educational support contingent only upon the child's remaining "enrolled as an undergraduate student in any institution of higher learning." In Kent, the judgment of the trial court had the potential to allow the child to prolong his undergraduate studies well beyond four years, by not requiring the child to take a minimum number of courses each session and by not limiting the number of courses that the child could withdraw from each session. The judgment of the trial court in this case has the same potential for prolonging the father's obligation to pay post-minority educational support. Therefore, we conclude that the trial court failed to place sufficient restrictions on the number of college years or the number of courses for which the father would be responsible for paying or for aiding in the payment of.
 V. Retroactive Support
The father argues that the trial court erred by ordering him to pay post-minority educational support retroactive to April 26, 1995. In Bayliss II, this court stated:
 "Without retroactivity in a case such as this, it is possible that a case could be delayed by appeals until college attendance was completed and that the non-custodial parent could avoid his or her duty to provide that support. 'There is a sound policy favoring retroactivity in most cases, because the party entitled to support should not be penalized for having to resort to time-consuming court proceedings.' Sutliff v. Sutliff, 339 Pa. Super. 523, 556, 489 A.2d 764, 781
(1985). Therefore, we find that, in cases involving post-minority support *Page 890 
for college education where the child is already attending college, the decision rendered by the trial court will be retroactive to the time of the filing of the request."
575 So.2d at 1121-22. In this case, the daughters had not graduated from high school when the petition for post-minority educational support was filed; therefore, the trial court erred in making its judgment retroactive to April 26, 1995.
The judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.
The mother's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.