On September 9, 1996, Joanne Pierce sued Wilhelmina Bishop in the Circuit Court of Baldwin County, seeking a temporary restraining order and an injunction to prevent Bishop from foreclosing on a mortgage executed by Pierce.[1] Bishop counterclaimed, seeking payment of the unpaid balance of the note secured by the mortgage. The case was tried on August 13, 1997, and the trial court entered its judgment on October 2, 1997. The trial court found that Bishop had unduly delayed in asserting her legal claims and held that she was barred by the doctrine of laches from pursuing those claims. The trial permanently enjoined Bishop from foreclosing on the mortgage or otherwise seeking to enforce any right of remedy arising from the mortgage.
Bishop appealed to the Supreme Court of Alabama, which transferred the appeal to this court, pursuant to § 12-2-7, Ala. Code 1975.
On appeal, Bishop argues (1) that the trial court's factual determination that an agreement existed concerning the satisfaction of the mortgage was not supported by the evidence; (2) that the trial court's conclusion that the doctrine of laches barred Bishop from enforcing the mortgage was erroneous; and (3) that the trial court's ruling that Bishop would be unjustly enriched by enforcement of the mortgage was erroneous.
This case was tried before the trial court, sitting without a jury, and the parties presented conflicting testimony concerning the nature of the mortgage and the distribution of the mortgage proceeds. Accordingly, our standard of review is the ore tenus standard:
 "[U]nder the ore tenus standard of review, the trial court's findings of fact based on oral testimony, and a judgment based on those findings, are given a presumption of correctness. A judgment based on such findings will not be reversed unless it is shown to be plainly and palpably wrong. *Page 665 
The appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court's decision is supported by reasonable inferences to be drawn from the evidence. The reason for giving such deference to the trial judge's findings based on disputed evidence in ore tenus proceedings is that the trial judge has the benefit of observing the witnesses' manner and demeanor and has the better opportunity to pass upon the credibility of their testimony."
Ex parte Pielach, 681 So.2d 154, 154-55 (Ala. 1996) (citations omitted). Moreover, where the trial court does not make specific factual findings, this court will assume that the trial court made such findings as would support its judgment. TransamericaCommercial Finance Corp. v. AmSouth Bank, N.A., 608 So.2d 375,378 (Ala. 1992).
The record reveals that Pierce and her husband, Fred J. Pierce ("Fritz"), applied for a loan from the Small Business Administration ("SBA") to repair damage caused by hurricane Frederic in November 1979. That loan was issued by the SBA in the amount of $33,600 and was secured by the mortgage in question, in July 1981. The mortgage proceeds were used to repair real property and buildings owned by Fritz's father, Fred R. Pierce ("Fred"). We infer from the record and the previous cases discussing the parties' farming operations, see footnote 1, that the farm was a much larger parcel of property near the 10 acres owned by Fritz and Pierce. The mortgage proceeds were not used for any repair or improvement to the approximately 10 acres owned by Pierce and Fritz, but that property was the security for the mortgage.
Fred and Fritz operated the repaired farm jointly as a family operation. Fritz and Pierce made annual payments to the SBA on the mortgage note during the years 1981 through 1985; those payments totaled $32, 825. In July 1986, Fred purchased an assignment of the SBA note and mortgage from Fritz and Pierce for $10,833.43, the approximate amount needed to pay off the note. We infer from the record that this sum was used to pay off the note. In November 1987, Fred assigned the note and mortgage to his daughter, Bishop, without consideration. Pierce and Fritz were divorced in February 1987; the 10-acre parcel securing the SBA mortgage was awarded to her. Fred died in 1988, and Bishop received the farm by conveyance and devise. Fritz died in 1991.
Fred never sought to enforce any right against Pierce or Fritz under the mortgage. Bishop waited until June 1996 to assert a claim against Pierce under the mortgage. Most of the SBA records regarding the mortgage and note were destroyed in 1994. The record also indicates that the amount expended on the improvements to Fred's farm far exceeded the amount Fred paid in 1986 for the assignment of the note and mortgage.
Bishop's first argument, that the trial court erred in finding that an agreement existed between Fred and Fritz about the satisfaction of the note and mortgage, is based on the trial court's statement in paragraph 2 of its "Conclusions of Law":
 "As Fritz Pierce mortgaged property legally in his name to benefit property in his father's name, it is illogical for this Court to determine that no understanding or agreement existed as to the satisfaction of this mortgage."
Review of the trial court's judgment shows that this language is an element of the finding that Bishop's delay in pursuing her claim on the mortgage made the intent of the original parties impossible to determine. The trial court's indication that some such "agreement" existed is certainly not plainly and palpably wrong under the facts of this case. Pielach, supra. Bishop's argument is misplaced, however, because it argues against the content of an "agreement," i.e., that Fred and Fritz agreed on some service by Fritz that would satisfy the mortgage. The trial court explicitly states that it can make no finding as to the content of an "agreement," because of Bishop's delay. Thus, Bishop is not arguing against any finding made by the court, and there is nothing before this court to consider.
Bishop's second argument addresses the dispositive legal issue in this case, whether the trial court erred in holding that Bishop *Page 666 
was barred by the doctrine of laches from asserting her claim on the mortgage. Our review of a trial court's application of the doctrine of laches is by a consideration of whether the trial court abused its discretion. Godwin Enters., Inc. v. Taylor,540 So.2d 703 (Ala. 1988); Delaney's, Inc. v. Pritchard,480 So.2d 1204 (Ala. 1985).
The case of Delaney's, supra, presents a close factual analog with the instant case. In Delaney's, our Supreme Court considered whether the doctrine of laches applied to bar the enforcement against a widow of a mortgage executed by her husband 16 years earlier. Based on facts showing that the plaintiff's delay had resulted in the loss of relevant records and witnesses, the trial court permanently enjoined foreclosure. In concluding that the judgment should be affirmed, the Supreme Court considered the application of an earlier case by this court, Williamson v.Shoults, 423 So.2d 874 (Ala.Civ.App. 1982).
 "We think, as did the trial court, that Williamson and the authority relied upon therein are dispositive of the issue on appeal. In Williamson, the Court of Civil Appeals affirmed the trial court's determination that the attempted foreclosure of a mortgage securing a note given to one spouse by the other over 20 years earlier and upon which no payment was ever made was unenforceable by the spouse due to laches. The Williamson court stated the following about the defense of laches:
 " 'Laches is a doctrine of equity. In speaking of the doctrine, Chief Justice Taney said in the case of McKnight v. Taylor, 42 U.S. (1 How.) 161, 168, 11 L.Ed. 86 (1843):
 " ' "We do not found our judgment upon the presumption of payment; for it is not merely on presumption of payment or in analogy to the statute of limitations that a court of chancery refuses to lend its aid to stale demands. There must be conscience, good faith and reasonable diligence to call into action the powers of the court. In matters of account, where they are not barred by the act of limitations, courts of equity refuse to interfere after a considerable lapse of time, from considerations of public policy, and from the difficulty of doing entire justice, when the original transactions have become obscure by the lapse of time and the evidence may be lost." '
 " 'The above quotation appeared in the opinion of the Alabama Supreme Court in the case of Salmon v. Wynn, 153 Ala. 538, 45 So. 133 (1907), and was repeated in that court's opinion in Creel v. Baggett Transportation Co., 284 Ala. 47, 221 So.2d 683 (1969)."'
480 So.2d at 1205-06.
The Court in Delaney's went on to adopt the general test for the application of the doctrine of laches set out in Williamson, supra: that the trial court did not abuse its discretion in applying the doctrine when unexcused delay by the claimant had resulted in loss of evidence and in uncertainty about the extent of the repayment of the obligation. In this case, the trial court found that Bishop's delay meant that her claim was asserted after relevant SBA records had been lost and when the critical testimony of Fred and Fritz could not be obtained. The record in this case reveals considerable enmity and dispute between the parties as to the nature and enforceability of the mortgage. Under these circumstances, the factual issue of whether Bishop's delay in enforcing her rights was excused is settled by the trial court's unique ability to observe the witnesses and assess their demeanor and credibility. Hall v. Mazzone, 486 So.2d 408 (Ala. 1986).
Moreover, the trial court found that there was uncertainty about the nature of the obligation and the extent to which it had been satisfied. These findings are supported by the record and not plainly and palpably wrong. Under the law stated inDelaney's, supra, we conclude that the trial court did not abuse its discretion in applying the doctrine of laches to bar the enforcement of the mortgage.
Bishop's third argument, that the trial court erred in finding that Bishop would be unjustly enriched if she were allowed to enforce the mortgage, is similar to her first *Page 667 
argument in that it challenges a finding of fact by the trial court relevant to the determination of whether the doctrine of laches should be applied. The trial court's finding that Bishop would be unjustly enriched is certainly supported by the facts in this record showing that the proceeds of the SBA loan were applied to improve Bishop's property. Therefore, the trial court's finding in this regard is not plainly and palpably wrong.Pielach, supra.
However, because the trial court's order is based on the application of the doctrine of laches, the finding of unjust enrichment is more properly viewed as addressing the element of laches concerning uncertainty in the satisfaction of the obligation. That is, the trial court's finding that Bishop would be unjustly enriched addresses the fact that if Bishop were allowed to enforce the mortgage after such a long delay, she would likely receive more than would be necessary to satisfy any outstanding indebtedness secured by the mortgage.
We conclude that the trial court was not plainly and palpably wrong in finding that Bishop's delay resulted in the loss of crucial information about the nature of the mortgage obligation and the extent to which it had already been satisfied. Pielachand Hall, supra. Accordingly, the trial court did not abuse its discretion in applying the doctrine of laches to bar Bishop's enforcement of the mortgage. Delaney's, supra. The trial court's judgment is therefore due to be, and it is hereby, affirmed.
AFFIRMED.
YATES, MONROE, and THOMPSON, JJ., concur.
CRAWLEY, J., dissents.
[1] This case is another in a series of disputes involving the division of property once used in a family farming operation. SeePierce v. Pierce, 6s2 So.2d 213 (Ala. 1994); Bishop v. Pierce,696 So.2d 1092 (Ala.Civ.App. 1996) (table).