Louis P. Hertzberg ("the father") appeals from a judgment of the Coffee Circuit Court ordering him to pay, among other things, postminority educational support on behalf of one of his two daughters.
The record indicates that Bill Gainey and Janice Gainey ("the maternal grandparents") were awarded custody of their two granddaughters in 1995. The father was ordered at that time to pay child support in the total amount of $435 per month for both daughters, as well as $139 per month for medical and dental insurance for both daughters, and one-half of the daughters' medical and dental expenses not covered by insurance. In October 2000, the grandparents filed a petition requesting that the father's child-support obligation be modified so as to require him to pay postminority educational support for his older daughter.[1]
On May 2, 2001, after a hearing in which the trial court received evidence ore tenus, the court entered a judgment ordering the father to pay postminority support, totaling 75 percent of his older daughter's college education costs. The court also ordered the father to pay $431 per month in child support for the younger daughter, who had not yet reached the age of majority.[2] The trial court's order stated, in pertinent part:
 "As each semester begins, Mr. Hertzberg is ordered to pay to his oldest daughter seventy-five percent (75%) of [her] tuition, books, and fees at [junior college]. (Note: Mr. Hertzberg's portion is not to exceed $1,000 per semester while his daughter attends [junior college] and lives in the home of [the grandparents]). As his oldest daughter enters Auburn University and each term/semester thereafter, Mr. Hertzberg is ordered to pay 75% of [her] tuition, books, and fees necessary to obtain a four-year degree . . . for a period of two continuous years after his oldest child enters Auburn University and not to exceed 75% of the costs of her books, tuition, fees, room, and board. (Note: Mr. Hertzberg's portion is not to exceed $3500 per term/semester)." *Page 563 
The father filed a motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial, alleging that he was financially unable to pay the amount ordered by the court. The court denied the motion. The father appeals.
The father, an airline mechanic, is employed with DynCorp, where he works approximately 40 hours per week and earns an hourly wage of $19.48. He has remarried and he now has a stepdaughter. The record indicates that the father's regular net monthly income is $2,319.47;[3] his current living expenses and debt obligations total approximately $2,300 per month.[4] This includes monthly living expenses for not only the father, but also his current wife and his stepdaughter. The father testified that his current wife has no income other than the amount she receives from cleaning other people's houses. However, when asked how much income his current wife receives from cleaning houses, the father responded: "I have no idea." Likewise, when asked how many houses his current wife cleans each week, the father answered, "I have no idea." When asked how much child support his current wife receives from her former husband for the stepdaughter, the father testified: "I'm not sure. Two-hundred and-some dollars. Three-hundred dollars. I'm not sure."
Although the older daughter had not reached the age of 19 at the time the petition was filed, she was already attending a junior college. During her first two semesters, the older daughter's transcript showed that she had made A's, B's, and one C. The grandmother testified that she expected the older daughter to attend Auburn University in the future.
The record indicates that the grandparents and the father currently share the older daughter's educational expenses. With respect to the daughter's first year of attendance at junior college, the father testified that he had paid approximately one-half of her college expenses, totaling $1,061.64. He further testified that making such a payment was no longer feasible. According to the father, his monthly earnings had decreased because he was no longer receiving approximately 18-20 hours of overtime per pay period, i.e., every two weeks.[5] He explained that a requirement that he pay even 50 percent of his daughter's educational expenses would be difficult, particularly when the daughter started attending Auburn University.[6] *Page 564 
The grandmother testified that she paid the other half of the daughter's education expenses.
Initially, we must note that in reviewing this case we are governed by the ore tenus rule. When a trial court hears ore tenus evidence, its judgment is presumed to be correct and will not be disturbed on appeal unless it is unsupported by the evidence so as to be plainly and palpably wrong. Bishop v. Pierce, 726 So.2d 663, 664 (Ala.Civ.App. 1998).
In Alabama, a parent may be required to provide postminority educational support. Ex parte Bayliss, 550 So.2d 986 (Ala. 1989). In reaching its decision, the trial court "`shall consider all relevant factors that shall appear reasonable and necessary, including primarily
the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education.'" Thompson v.Thompson, 689 So.2d 885, 887 (Ala.Civ.App. 1997) (quoting Ex parteBayliss, 550 So.2d at 987). Further, this court has held that "[a] parent has a legal duty to provide or aid in providing a college education for his/her child if the child demonstrates the ability and willingness to attain a higher education and the parent has sufficient estate, earning capacity, or income to provide financial assistance without undue hardship to himself." Thrasher v. Wilburn, 574 So.2d 839, 841
(Ala.Civ.App. 1990). In this case, the older daughter's ability and willingness to obtain a college education are not disputed by the parties.
This court has further held, however, that the trial court must set reasonable limitations on the parent's responsibility for postminority educational support, because the failure to do so may impose an undue hardship on the paying parent. See, e.g., Penney v. Penney, 785 So.2d 376
(Ala.Civ.App. 2000); Ullrich v. Ullrich, 736 So.2d 639, 643
(Ala.Civ.App. 1999); Kent v. Kent, 587 So.2d 409 (Ala.Civ.App. 1991) (reversing and remanding for the trial court to limit the support to a reasonable period, require the child to maintain at least a "C" average, and require that the child be enrolled as a full-time student).
The father first argues that the trial court abused its discretion by failing to place reasonable restrictions on the award of postminority educational support. We agree. The trial court failed to incorporate sufficient temporal and academic restrictions in its order. The trial court's judgment ordered the father "to pay to his oldest daughter seventy-five percent (75%) of [her] tuition, books, and fees at [junior college]." Although it further provides that the father will be responsible only for paying the support "for a period of two continuous years after [the daughter] enters Auburn University," the order failed to place a reasonable time limit on the daughter's completion of junior college. This provision could arguably require the father to pay support until the daughter obtains a degree, even if it takes her substantially longer than four years. Moreover, the order contains no requirements as to the minimum number of courses the daughter must take each semester, nor does it limit the number of courses the *Page 565 
daughter may drop or fail and still expect support from the father. It also failed to include academic restrictions providing that the support will continue only if the daughter maintains acceptable grades.
The father also argues that the trial court erred in ordering him to pay 75 percent of his older daughter's postminority educational expenses because, he contends, it imposes an undue hardship on him. The father testified that he was financially unable to pay such a large percentage of the costs. He further testified that his income almost equals his monthly expenses. The exhibits filed with his postjudgment motion tend to support the father's testimony in this regard. Although there was evidence indicating that the father was not currently receiving the same amount of overtime as he had previously, the trial court also heard testimony to the effect that the father was still allowed to work occasional overtime. The portion of the postminority support the father is required to pay while the daughter is attending junior college will amount to approximately $1,000 per semester. As this court has explained, "`undue hardship' does not mean without any personal sacrifice. Most parents who send their children to college sacrifice to do so." Thrasher, 574 So.2d at 841.
In addition, the trial court heard the above-described equivocal testimony from the father regarding the amount of income earned by his current wife and the amount of child support received by his current wife for her daughter. Further, this court has previously noted that "[t]he fact that the father is now supporting a new wife and her [child] does not relieve him of his obligation to his [child from his first marriage]." Coleman v. Coleman, 648 So.2d 605, 607 (Ala.Civ.App. 1994).See also Prestwood v. Prestwood, 344 So.2d 509 (Ala.Civ.App. 1977). On the basis of the testimony presented to the trial court, we cannot conclude that the trial court abused its discretion in requiring the father to pay up to $1,000 per semester for the daughter's educational expenses while she attends junior college.
The father also argues that requiring him to pay 75 percent of the daughter's prospective educational expenses (not to exceed $3500 per semester) when she attends Auburn University imposes an undue hardship on him. Without evidence of the cost of attending a postsecondary educational institution, however, we cannot review a trial court's decision as to the amount it orders a parent to pay for postminority educational support. Penney, 785 So.2d at 379 (citing Thrasher, 574 So.2d at 841). In Penney, this court held that it was reversible error for the trial court to fail to take evidence and to make findings to determine the expenditures, including tuition, fees, room, and board, that would have been necessary for the daughter to attend college. Id. at 381. Seealso Thrasher, 574 So.2d at 841. In this case, the only evidence of the daughter's prospective educational expenses at Auburn University were general statements made by the maternal grandmother while testifying. No competent evidence regarding the actual cost of attending Auburn University, including tuition, books, fees, and room and board, was introduced at trial. We conclude that the trial court erred in failing to take such evidence.
Accordingly, we reverse the portion of the trial court's judgment awarding prospective postminority educational support relating to the older daughter's anticipated attendance of Auburn University. We remand the case for the trial court to take such further evidence as it deems necessary to make a determination of the expenditures for tuition, fees, room, and board, that will be necessary for the child to *Page 566 
attend Auburn University and a determination of whether requiring the father to pay 75% of these expenditures will result in an undue hardship on the father. In addition, the trial court should impose reasonable temporal and academic limitations on its award. We affirm that portion of the judgment requiring the father to pay 75 percent of the daughter's current expenses at junior college.
The appellees' request for the award of an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Thompson and Pittman, JJ., concur.
Yates, P.J., concurs in the result.
Crawley, J., dissents.
[1] The older daughter reached the age of majority on February 13, 2001.
[2] The trial court also increased the total child support payable by the father for both daughters to $684 per month for the four months before the older daughter reached the age of majority.
[3] The record indicates that the deductions from the father's gross pay that result in a net monthly income of $2,319 include deductions totaling $139 for the medical and dental insurance coverage for his daughters.
[4] The father's monthly bills and living expenses include a mortgage payment of $673.74, a second mortgage payment of $160, $431 for child-support, $120.75 for electricity, $19.56 for water, $65.58 for phone service, $55.45 for cable, $50 for a credit-card bill, $110 for gasoline, $138.22 for medical expenses not covered by insurance, $76.02 for car insurance, and $400 for groceries, supplies, etc., for three people.
[5] The record does indicate, however, that the husband received overtime pay of $30 per hour for eight hours of overtime work during the four months before trial.
[6] The father testified that he had no control over the amount of overtime work he was offered by his employer. He also testified as follows, however, when asked how he would pay 50 percent of the older daughter's "college expenses" (the question did not specify either expenses for attending junior college or expenses for attending Auburn University) if ordered to do so by the court: "I don't know. Hopefully, I can get overtime. That's the only way I can do it." The record also contains the following testimony by the father:
 "Q. Then what is your position on payment of college expenses?
 "A. I had agreed with the Gaineys to pay half. And I'm still going to continue to try to come up with the money any way that I can.
"Q. Are you financially able to pay 75 percent?
"A. No, sir.
 "Q. Do you understand that when [your older daughter] goes to Auburn —
 "A. The expenses will increase, yes. Hopefully, I'll have a few small bills taken care of by then, so I will be financially able to."