960 So.2d 694 (2006)
Jack H. THOMAS, Jr.
v.
Elizabeth Thomas CAMPBELL.
No. 2050374.
Court of Civil Appeals of Alabama.
December 15, 2006.
*696 Bruce B. Stone of Duck, Calhoun, Taylor & Stone, Fairhope, for appellant.
James M. Scroggins, Daphne, for appellee.
PITTMAN, Judge.
Jack H. Thomas, Jr. ("the father"), and Elizabeth Thomas Campbell ("the mother") were divorced by a judgment entered by the Baldwin Circuit Court. During the course of the parties' marriage, they had two children, Cathryn (born in February 1984) and Laura (born in November 1985); because the mother acted as the children's primary custodian, the father was directed to pay child support. In September 2001, the trial court entered a judgment that was based upon an agreement reached by the parties in which the father's child-support obligation was modified so as to require him to pay the mother $720 per month "until . . . Laura . . . completes her post secondary education."
In June 2004, the father, appearing pro se, filed a pleading seeking termination of his child-support obligation as to Cathryn' (whom he averred had entered into a marriage in May 2004) and modification of his child-support obligation as to Laura. The mother averred in her answer that no change in circumstances had occurred. The father subsequently retained counsel, who filed an amended complaint on his behalf averring that a change in circumstances had occurred and requesting, among other things, that the trial court modify his child-support obligation "to coincide with the present needs of the children, as well as [his] ability to pay."
After an ore tenus proceeding, the trial court entered a judgment modifying, retroactive to June 2004, the father's child-support obligation specified in its previous judgment. Specifically, the trial court ordered that each party would be required to pay one-half of the postminority educational expenses of the children, including "room and board" (which was "defined as a reasonable dorm plan" and a meal plan covering "the number of meals the . . . children would be expected to need if living on campus" as stated in the "applicable school catalog"), until the earlier of (1) the date each child earned a bachelor's degree or (2) May 31, 2007, as to Cathryn and May 31, 2008, as to Laura. The trial court placed the further conditions on the award that the children were to maintain at least a "C" grade average and were to undertake a full course load each academic session. The father appeals from that judgment.
Our standard of review was aptly stated in Lindsey v. Patterson, 883 So.2d 223, 225 (Ala.Civ.App.2003):
"When a trial court receives evidence ore tenus, as it did in this case, its judgment is presumed to be correct and will not be disturbed on appeal unless it is unsupported by the evidence so as to be plainly and palpably wrong. Bishop v. Pierce, 726 So.2d 663, 664 (Ala.Civ. App.1998). Also, the modification of a *697 child-support order rests soundly within the trial court's discretion and will not be disturbed on appeal absent a showing that the ruling is not supported by the evidence and, thus, is plainly and palpably wrong. Berryhill v. Reeves, 705 So.2d 505 (Ala.Civ.App.1997)."
The statement of the issues set forth in the father's principal appellate brief sets forth two issues: whether the trial court acted outside its discretion in compelling him to pay one-half of Cathryn's and Laura's educational expenses (particularly room and board) and whether the trial court should have deemed Cathryn emancipated in light of her having entered into a marriage that was later annulled. However, the father's argument asserts four discrete challenges to the trial court's judgment: (1) an attack on Cathryn's and Laura's aptitude to succeed in college and the time-limitation provisions of the judgment; (2) an attack on the monetary requirements of the judgment as constituting an undue hardship; (3) an attack on the room-and-board provisions of the judgment; and (4) an attack on the award of support as to Cathryn in light of what the father terms her "emancipation" arising from her annulled marriage. Of those four arguments, only the first, second, and fourth comply even minimally with Rule 28(a)(10), Ala. R.App. P., which requires that argument in an appellant's brief contain "citations to the cases, statutes, other authorities, and parts of the record relied on." The father's complete failure to cite authority in support of his third argument  that the trial court should not have included room and board in the scope of its postminority-support order  warrants pretermission of our consideration of the merits of that argument. See FabArc Steel Supply, Inc. v. Composite Constr. Sys., Inc., 914 So.2d 344, 354 (Ala.2005).
Before addressing the father's remaining arguments, we note that the principles of Ex parte Bayliss, 550 So.2d 986 (Ala. 1989), do not generally apply in the context of a parent's contractual undertaking to provide postminority support to minor children that is incorporated into a binding judgment. As we "specifically point[ed] out" in Simpkins v. Simpkins, 595 So.2d 493, 495 (Ala.Civ.App.1991), which involved a petition to modify a contractual undertaking similar to that entered into by the parties in this case in 2001, "this is not a Bayliss fact situation or proceeding." Rather, the trial court's consideration of a petition to modify such an undertaking is governed by the principle that "an agreement between the parties fixing child support payments, when incorporated into a judgment, becomes merged into the judgment and thereby loses its contractual nature to the extent that a court of equity has the power to modify the decree when changed circumstances so justify." Ralls v. Ralls, 383 So.2d 857, 859 (Ala.Civ.App. 1980);[1]see also Wesley v. Wesley, 627 So.2d 441, 444 (Ala.Civ.App.1993) ("[A]wards of post-secondary child support may be modified, just as other awards of child support are modified.").
However, in this case, counsel for the father requested the trial court "to adjust [postminority support] according to Bayliss," and the trial court concluded that a change in circumstances had occurred. That court also announced at the close of the trial that the modification judgment that it intended to enter would be governed by Bayliss, and it referred to Bayliss in its judgment; neither party has *698 challenged that court's determination that Bayliss applied to the father's complaint. Thus, in deciding the father's appeal, we will assume, without deciding, that Bayliss and its progeny govern the propriety of the trial court's judgment.
We now consider the father's fourth argument: whether the trial court could properly have deemed the mother to be entitled to further postminority educational support as to Cathryn despite Cathryn's having entered into a marriage in May 2004 that was subsequently annulled in November 2004 by a judgment of the Baldwin Circuit Court. The father posits that because a duty to pay child support as to a minor child ends upon that child's marriage or other emancipation, see Owens v. Owens, 412 So.2d 820, 821 (Ala. Civ.App.1982), and because a judgment declaring a minor child to be emancipated that is entered pursuant to § 26-13-1, Ala. Code 1975, has been held to preclude a subsequent award of Bayliss support as to that child, see B.A. v. State Department of Human Resources, 640 So.2d 961, 962 (Ala.Civ.App.1994), Cathryn's marriage should be deemed to have emancipated her so as to nullify any duty on the father's part to pay postminority support on her behalf. Acceptance of the father's argument requires that this court agree with two distinct propositions: (1) that marriage of a child is an event that necessarily terminates the power of a trial court to continue an earlier award of postminority educational support; and (2) that a subsequent annulment of that marriage does not have any effect upon such a termination.
We need not address the validity of the first of those propositions because we are convinced of the invalidity of the second. The Alabama Supreme Court aptly noted in Henley v. Foster, 220 Ala. 420, 422, 125 So. 662, 664 (1930), that although an annulment proceeding is similar to a divorce proceeding in that both "relate to the marriage status," those proceedings differ significantly in that a divorce judgment "fixes the future marital status" of the parties, whereas an annulment adjudicates the parties' "past and present" marital status (emphases added). In other words, a judgment of divorce operates to terminate an extant marriage, but a judgment of annulment declares that what had appeared to be a valid marriage was never, in fact, a marriage at all: "An annulment establishes that the marital status never existed. So annulment and dissolution of marriage (or divorce) are fundamentally different: an annulment renders a marriage void from the beginning, while dissolution of marriage terminates the marriage as of the date of the judgment of dissolution." Black's Law Dictionary 99-100 (8th ed.2004).
In light of that fundamental distinction between a judgment of divorce and an annulment, it should not be surprising that American jurisdictions considering the effects of such judgments on a parent's duty to pay child support have drawn a distinction between the two. A child whose marriage is terminated by divorce does not thereby become unemancipated so as to warrant the subsequent reimposition upon that child's parent of a duty to make child-support payments. See, e.g., Laird v. Swor, 737 S.W.2d 601, 603 (Tex. Ct.App.1987), and State ex rel. Dep't of Health & Human Res. v. Farmer, 206 W.Va. 249, 254-55, 523 S.E.2d 840, 845-46 (1999). In contrast, a child whose marriage is annulled may properly be deemed not to have been emancipated by the marriage so as to relieve that child's parent of a duty to pay child support. See State ex rel. Dep't of Econ. Sec. v. Demetz, 212 Ariz. 287, 291-92, 130 P.3d 986, 990-91 (Ct.App.2006); In re Marriage of Fetters, 41 Colo.App. 281, 584 P.2d 104 (1978); *699 Eyerman v. Thias, 760 S.W.2d 187, 190 (Mo.Ct.App.1988) (annulment of child's marriage during her minority "reinstated her status as an unemancipated minor child"); Fernandez v. Fernandez, 717 S.W.2d 781, 783 (Tex.Ct.App.1986); cf. In re Marriage of Walters, 238 Ill.App.3d 1086, 1092-93, 178 Ill.Dec. 176, 182-83, 604 N.E.2d 432, 438-39 (1992) (child's marriage that was subsequently declared invalid held not to constitute an "emancipating event" so as to warrant termination of parent's postminority-support obligation). In other words, "[c]ourts have consistently decided that an annulled marriage allows [a court] to revoke emancipation status and reinstate [a] parental support obligation." Chadwick N. Gardner, Note, "Don't Come Cryin' to Daddy! Emancipation of Minors: When Is a Parent `Free at Last' from the Obligation of Child Support?" 33 U. Louisville J. Fam. L. 927, 942 (1995).
In this case, it is undisputed that Cathryn's marriage was voided by a judgment of annulment rather than terminated by a divorce judgment. Therefore, as far as the law is concerned, that marriage does not exist and, what is more, never existed. It follows, then, that the trial court did not err in disregarding that marriage in determining the father's postminority-support obligation. As to that issue, the trial court's judgment is affirmed.
The father's remaining arguments focus on aspects of the postminority-support judgment that, he says, violate principles that were enunciated in a post-Bayliss line of cases dating from Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App. 1990), in which we noted a parent's "legal duty to provide or aid in providing a college education for his/her child if the child demonstrates the ability and willingness to attain a higher education and the parent has sufficient estate, earning capacity, or income to provide financial assistance without undue hardship to himself." The father appears to contend that the postminority-support award is inequitable in light of evidence adduced at trial concerning the children's aptitude for college studies and his comparative ability to pay for those studies.
If we assume, as we have said we would assume, that Thrasher and other progeny of Bayliss are authoritative in this setting (in which the father has previously contracted to pay postminority support), the pertinent question regarding aptitude may be simply stated: did the mother demonstrate that the children had the "ability to comprehend" the subject matter of their course of study "in such a way as to make at least average grades upon examination"? See Kent v. Kent, 587 So.2d 409, 411 (Ala.Civ.App.1991). The mother testified at trial that Cathryn had graduated from Daphne High School in 2002 and that she had completed the 2002-2003 and 2003-2004 academic years at Auburn University before transferring to Faulkner State Community College for three academic terms; at the time of trial, she had earned 98 credit hours and an approximate 3.0 grade-point average, although she had changed her major field of study from nursing to business. According to the mother, Laura left high school early, obtaining a GED certificate (the equivalent of a high-school diploma), and successively enrolled at two community colleges; at the time of trial, she had earned 48 credit hours and a 3.5 grade-point average.[2] The mother testified that the children planned to enroll at the University of South Alabama in the upcoming fall term. Although the father notes that the children have not attended college during each fall, spring, *700 and summer academic session after leaving high school, we cannot conclude on this record that the trial court erred in determining that the mother proved that the children had sufficient aptitude under Kent to warrant the continuation of the father's duty to pay postminority educational support on their behalf. As to that issue, the trial court's judgment is affirmed.
The father also contends that the trial court erred in determining the time limitation upon his support obligation. As we have noted, the trial court's judgment establishes two alternate termination events  the award of a bachelor's degree to each child or the arrival of particular dates certain  and states that the father's postminority-support obligation will terminate upon the earlier event; thus, the father's support obligation as to Cathryn will terminate no later than May 31, 2007, when she will be 23 years old, and his obligation as to Laura will terminate no later than May 31, 2008, when she will be 22 years old. This court has previously indicated that judgments awarding postminority educational support pursuant to Bayliss should set "reasonable" time limitations, and we have reversed judgments that are so open-ended that they do not "prevent the [pertinent child] from taking only one or two classes each term and prolonging [an] undergraduate career, as well as the [parent's] financial obligation, for well beyond four years." Kent, 587 So.2d at 413. However, even assuming, as we do, that Bayliss and its progeny apply here, we cannot agree with the father's contention that the trial court has not placed reasonable time limitations on his support obligation in this case simply because the judgment allowed each child five years to complete her studies. See Lynn v. Lynn, 772 So.2d 1189, 1192 (Ala.Civ. App.2000) (determining that judgment providing for payment of postminority support pursuant to Bayliss until pertinent child reached the age of 23 "limit[ed] the support to a reasonable period"). We thus affirm the trial court's judgment as to this issue.
The final argument to be addressed is whether the trial court imposed an "undue hardship" upon the father in ruling that he would be responsible for one-half of the children's postminority educational expenses, which that court expressly determined would include expenses of a "reasonable dorm plan" and "the number of meals the . . . children would be expected to need if living on campus."[3] Although the mother testified that each child would incur aggregate expenses of $2,700 each school term at the University of South Alabama for tuition and fees, the trial court was not presented any evidence of the children's room-and-board costs such that the complete extent of the father's monetary responsibility can be ascertained; indeed, the trial court's judgment states that those amounts are to "be determined by consulting the applicable school catalog."
"It is essential for the trial court to consider evidence pertaining to the amount required for books, tuition, and actual costs of room and board in order to make a determination regarding the amount a parent should contribute without experiencing undue hardship." Stanford *701 v. Stanford, 628 So.2d 701, 703 (Ala.Civ. App.1993) (emphasis added); accord, e.g., Penney v. Penney, 785 So.2d 376, 379 (Ala. Civ.App.2000); Gordon v. Gordon, 804 So.2d 241, 244 (Ala.Civ.App.2001); and Hertzberg v. Gainey, 855 So.2d 561, 565 (Ala.Civ.App.2003). Although we understand the trial court's efforts to remedy the lack of proof at trial by suggesting a "gap filler" mechanism for ascertaining the father's support obligation as to room and board, we note that "[i]n child support cases the trial court is bound by the legal evidence or lack of it," and "[i]t may not speculate on the ability of the parties to pay nor on the needs of the children." Berry v. Berry, 579 So.2d 654, 656 (Ala. Civ.App.1991).
Because we cannot determine from the record the total extent of the father's financial obligation, we cannot confirm that the trial court's judgment does not subject the father to an undue hardship. Therefore, we are forced to agree with the father that the trial court's judgment must be reversed on that ground alone. The cause is remanded for further proceedings. On remand, the trial court should take sufficient evidence to ascertain and declare the educational expenses already incurred, and those yet to be incurred, by the childrenincluding the amount of actual room-and-board expenses incurred by the children while living off campus or the cost of room and board that the children would incur if they lived on campusand "should determine whether requiring the father to pay 50 percent, or some other fraction, of those actual expenses or [substituted on-campus] costs would constitute an undue hardship upon him." Gordon, 804 So.2d at 245; see also Hertzberg, 855 So.2d at 565-66.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and THOMPSON, J., concur.
MURDOCK, J., concurs in the result, without writing.
BRYAN, J., concurs in part and concurs in the result in part, with writing.
BRYAN, Judge, concurring in part and concurring in the result in part.
Insofar as the main opinion holds that the trial court did not err in disregarding the marriage of one of the children in determining the father's postminority-support obligation, I concur in the result only. In all other respects, I concur in the main opinion.
NOTES
[1] We note that to the extent that Ralls held that "a court does not have the power, in the absence of an agreement, to order a parent to support an adult child," 383 So.2d at 859, Bayliss expressly overruled Ralls. Bayliss, 550 So.2d at 994.
[2] The father admitted at trial that both children were "very smart."
[3] We note that although the children planned to live off campus in a home provided by the mother and her husband, a trial court has the discretion to determine, as the trial court did in this case, that a postminority-support obligation as to a student's housing should instead be based upon the less expensive cost of an on-campus dormitory room. See Gilliam v. Prater, 785 So.2d 382, 385 (Ala.Civ.App. 2000) (plurality opinion). The same principle would, arguably, apply to meals.