156 So.2d 345

**James Harlan OGLE**

v.

**Mildred Brook OGLE.**

**6 Div. 657.**

Supreme Court of Alabama.

Sept. 5, 1963.

Godwin, Morgan & Hughes, Birmingham, for appellant.

**484**

Nina Miglionico, Birmingham, for appellee.

GOODWYN, Justice.

This is an appeal by the husband from a decree modifying a support and maintenance provision of a divorce decree.

The original decree, rendered on January 28, 1946, gave to the mother the custody of the parties' two minor children, a daughter seven years of age and a son three years of age, and provided for payment by the father to the mother of $125 per month "for alimony for herself and for support and maintenance of the said minor children, the first payment to be due on the first day of February 1946 and continue each month thereafter until Richard Ogle, the younger of the two minor children, shall enter public school, after which time the monthly payments shall be $100, * * *."

On December 23, 1947, the decree was modified by changing the amount allowed for support and maintenance from $125 to $112.50 per month. For a review of that decree, see Ogle v. Ogle, 251 Ala. 623, 38 So.2d 864.

In January, 1957, Mrs. Ogle wrote a letter to Mr. Ogle stating, in substance, that she felt $65 a month would be a proper amount for him to pay thereafter since the daughter was no longer dependent upon her for support. Mr. Ogle then started making payments of $65 per month.

On October 18, 1960, Mrs. Ogle filed a petition to modify the decree so as to require the father to pay the sum of $200 per month "for the support and maintenance of his said son until he reaches the age of 21 years or so long as he continues in college or is in a position to support himself." The petition, as amended, alleges that the son is 18 years of age and is a student at the University of Alabama; that complainant is unable to keep him in college; that his expenses are approximately $200 a month; that the son is in need of support and maintenance from his father for his continued education; that both complainant and respondent are college graduates; that respondent is well able to contribute to the education of his son; that, at the time of the original decree in 1946, respondent was earning approximately $300 per month and that his income is now more than $1,000 per month.

Respondent's demurrer to the petition being overruled, he then filed an answer. Both the demurrer and answer are grounded principally on respondent's contention that the petition does not show a sufficient change in circumstances, since the modification agreed to by the parties in January

1957, to warrant the modification prayed for; that a college education is not a necessary; and that there is no legal or equitable duty on a father to furnish his child with a college education.

Respondent also alleges that he has remarried, has two children by his second marriage, and that his second wife is not employed.

There is evidence that petitioner is now an employee of Jefferson County earning a gross of $364.66 per month and a net of $291.13 after deductions for income tax, social security tax and hospital insurance.

Evidence on the petition was taken orally before the trial court. Mrs. Ogle was the only witness.

On November 17, 1960, a decree of modification was rendered providing that "respondent pay to complainant as alimony, support and maintenance for herself and the minor son of the marriage the sum of One Hundred Thirty Dollars ($130.00) a month for the school months (while the said minor son is at the University of Alabama) and the sum of Sixty-five Dollars ($65.00) a month for the school vacation months, to-wit the months of June, July and August." The decree also provides that the respondent pay $100 to complainant for her solicitor's services in the proceeding. Complainant prays that we allow an additional solicitor's fee in connection with this appeal.

There has been an abridgement of the record by agreement of the parties, pursuant to Supreme Court Rule 26.

The basic question for decision boils down to this: Can the father of a minor child, over sixteen years of age and in the mother's custody under a divorce decree, be required to contribute toward the cost of a college education for such child?

Appellant's position perhaps can be stated best by quoting the following from his briefs, viz:

"While recognizing that Title 34, Section 35 permits the Court to give the custody and education of the children to either party, the Appellant's position is that this section must be considered in pari materia with Title 52, Sections 297 and 301 and limited to public school education.

\* \* \* \* \* \*

"The Appellant contends that a ruling by this Court that a college education is a necessary would be equally applicable to a situation where there is no divorce. If a college education is necessary for a minor child, what matters the relationship of the parents. Is a minor child of divorced parents entitled to more education than a child whose parents are not divorced?

\* \* \* \* \* \*

"Appellant concludes that the Alabama Legislature in passing Title 52, Sections 297 and 301 has pre-empted the field of education for minor children. After a child reaches the age of sixteen years or has completed high school, the subject of education is not a matter of concern for the Court nor the child's parents, but solely within the discretion of the minor child.

\* \* \* \* \* \*

"[T]he court cannot grant the education of a minor child to either parent after the child attains 16 years of age or has finished high school as now constituted. Appellant insists that this statute [§ 297, Tit. 52, Code 1940] was enacted to declare the public policy of this state to be that every child within the group defined therein has the *duty* to attend school and the parents have the corresponding *duty* to see that the children attend. After the child passes beyond the compulsory age attendance statute, then there is no duty for the child to attend school and there is no duty for the parents to see that the child attends school. The appellant will be the first to admit that the Legislature of Alabama could amend the compulsory school attendance law to include a college or university; however, it is still the position of the appellant that

486

this is a matter for the Legislature and not the Courts.

\* \* \* \* \* \*

"The appellant agrees that the Court may award the custody of the child to the mother, but the Court cannot award the education of this child to anyone. It is not within the Court's powers since the legislature has given to the child the right to determine his educational pursuits. Neither the parents nor the Court has any control over the matter."

Code 1940, Tit. 34, § 35, supra, to the extent here pertinent, provides as follows:

"Upon granting a divorce, the court may give the custody and education of the children of the marriage to either father or mother, as may seem right and proper, having regard to the moral character and prudence of the parents, the age and sex of the children; \* \*."

Sections 297 and 301, Code 1940, Tit. 52, as amended, supra, provide, to the extent here pertinent, as follows:

"§ 297. Ages of children required to attend school.—Every child between the ages of seven and sixteen years shall be required to attend a public school, private school, denominational school, parochial school, or be instructed by a competent private tutor, for the entire length of the school term in every scholastic year. \* \* \*"

"§ 301. Children exempt from attending public school.—The following children \* \* \* shall not be required to attend school, or to be instructed by a private tutor; namely, \* \* \* (b) a child sixteen years of age and upward or a child who has completed the course of study of the public schools of the state through high school as now constituted; \* \* \*."

▇ The object of the compulsory education law is that all children shall be educated at least to the extent thereby prescribed. In other words, it is a minimum educational requirement. We do not think it was intended to deny to a court of equity

the authority to require the father of a minor ward of the court (who is in his mother's custody pursuant to a decree divorcing his mother and father) to contribute to the education of the ward after he reaches sixteen years of age. Although it does not appear that this principle has been specifically spelled out by any decision of this court, there are cases which lend support to it. See: Scott v. Scott, 247 Ala. 598, 599, 25 So.2d 673; Farmer v. Coleman, 231 Ala. 527, 528, 529, 165 So. 778; Wells v. Wells, 230 Ala. 430, 431, 161 So. 794.

▇ While there are divergent views on the question, it seems to us that the cases from other jurisdictions holding that a father may be required to contribute toward the college education of his minor child, who is in his mother's custody pursuant to a divorce decree, are supported by the better reasoning. Among such cases are Pass v. Pass, 238 Miss. 449, 118 So.2d 769, and Esteb v. Esteb, 138 Wash. 174, 244 P. 264, 47 A.L.R. 110. From Pass v. Pass, we quote the following:

"The serious question presented, however, is whether the court has the legal right to compel the father to provide funds for a college education for his minor child. As above stated, we have not heretofore passed upon this question. The views of other jurisdictions are divergent as appears from an elaborate note set forth in 56 A.L.R.2d, pages 1220 et seq. There is respectable authority, however, among the courts of other jurisdictions to support the rule that the father, under proper circumstances, may be required to provide for the college education of his minor child.

\* \* \* \* \* \*

"\* \* \* In 67 C.J.S. Parent and Child § 15, p. 692, appears the following: 'The extent of education beyond what is required by the school system of the state is left largely to the discretion of the child's father. Ordinarily he is under no duty, and may not be compelled, to give his child a college or

professional education, *regardless of his financial capacity. However, it has been held that the father may be required to provide funds for a college education of his minor child in the custody of the mother where the adaptability of such child for further education has been plainly shown.'* (Emphasis ours.)

"Thus it will be observed that there are conflicting views on the question here presented, and in the absence of a precedent among our own decisions, we hold that where the minor child is worthy of and qualified for a college education and shows an aptitude therefor it is the primary duty of the father, if in reason financially able to do so, to provide funds for the college education of his minor child in the custody of the mother, where the mother and father are divorced and living apart. * * *

"A contrary view may have been justified in former times when the needs of the family, and of society, and of government were less exacting than they are today. But we are living today in an age of keen competition, and if the children of today who are to be the citizens of tomorrow are to take their rightful place in a complex order of society and government, and discharge the duties of citizenship as well as meet with success the responsibilities devolving upon them in their relations with their fellow man, the church, the state and nation, it must be recognized that their parents owe them the duty to the extent of their financial capacity to provide for them the training and education which will be of such benefit to them in the discharge of the responsibilities of citizenship. It is a duty which the parent not only owes to his child, but to the state as well, since the stability of our government must depend upon a well-equipped, a well-trained, and well-educated citizenship. We can see no good reason why this duty should not extend to a college

education. Our statutes do not prohibit it, but they are rather susceptible of an interpretation to allow it. The fact is that the importance of a college education is being more and more recognized in matters of commerce, society, government, and all human relations, and the college graduate is being more and more preferred over those who are not so fortunate. No parent should subject his worthy child to this disadvantage if he has the financial capacity to avoid it."

From Esteb v. Esteb, is the following:

" *. * * [T]he question of what sort of an education is necessary, being a relative one, the court should determine this in a proper case from all the facts and circumstances. Nor should the court be restricted to the station of the minor in society, but should, in determining this fact, take into consideration the progress of society, and the attendant requirements upon the citizens of to-day. The rule in Middlebury College v. Chandler, [16 Vt. 683, 42 Am.Dec. 537], supra, was clearly based upon conditions which existed at that time. An opportunity at that early date for a common school education was small, for a high school education less, and for a college education was almost impossible to the average family, and was generally considered as being only within the reach of the most affluent citizens. * * * But conditions have changed greatly in almost a century that has elapsed since that time. Where the college graduate of that day was the exception, to-day such a person may almost be said to be the rule. The law in an attempt to keep up with the progress of society has gradually placed minimum standards for attendance upon public schools, and even provides punishment for those parents who fail to see that their children receive at least such minimum education. That it is the public policy of the state that a college education should be had, if possible, by

all its citizens, is made manifest by the fact that the state of Washington maintains so many institutions of higher learning at public expense. It cannot be doubted that the minor who is unable to secure a college education is generally handicapped in pursuing most of the trades or professions of life, for most of those with whom he is required to compete will be possessed of that greater skill and ability which comes from such an education.

\*    \*    \*    \*    \*    \*

"Appellant's counsel strenuously argued that it is the father's right to determine what education he will give his children, and that if he decides not to give them a college education, and to save his money for other purposes, the courts should not interfere. This rule is a salutary one, and should always be applied to a proper case. Whenever a father has the custody of a child, the law presumes that he will provide for the child education in that vocation for which it is best fitted, and which will enable it to meet the conditions of modern life. But can the courts indulge that presumption where the custody of the child has been taken from the father? It seems to us that the mother, while she has the custody of the child, being in daily contact with her, and knowing her talents and abilities, should be the one to determine what education she should have. Parents, when deprived of the custody of their children, very often refuse to do for such children what natural instinct would ordinarily prompt them to do. \* \* \* In most cases the father, who is the one who holds the purse strings, and whose earning capacity is greater than that of the mother, is the one who is able to give the minor a proper education. To adopt the rule contended for by appellant would be to put the court, in providing for the custody of the child, in the dilemma of knowing that if the child is given to the mother the father would, in very many cases, refuse to give it an education greater than that required under the penalty of the law, and that the mother could not do so. The court would then be under the necessity of giving the child to the mother, who appeared to be the proper person to care for it, and leave the child without hope of an adequate education, or, to the father, who perhaps was an improper person, with the hope that it will receive its just opportunities.

"Our conclusion is that, since the mother has the custody of this child, knows its character and ability, she is in position to determine what education it should have, what course should be pursued, and, this having received the approval of the court, we think it follows that the court's ruling should be upheld."

There is no detailed evidence concerning the aptitude of the child for a college education. However, the fact that, when the petition for modification was filed, he had already entered the University of Alabama as an engineering student is sufficient, we think, to support a finding of his aptitude for a college education, particularly in the absence of any indication whatever of his inaptitude.

For annotations giving cases both pro and con on the question, see: 56 A.L.R.2d 1207, 1220; 133 A.L.R. 902, 911; 47 A.L.R. 118.

■ Pursuant to appellee's petition, we think it appropriate, under the circumstances of this case, that the sum of $100 be allowed appellee as a fee for her solicitor for representing her on this appeal. It is so ordered. See: Isom v. Isom, 273 Ala. 599, 600, 143 So.2d 455; Frazier v. Frazier, 273 Ala. 53, 58, 134 So.2d 205; Gambrell v. Gambrell, 268 Ala. 671, 673, 110 So.2d 248, and cases there cited.

Affirmed, with allowance to appellee of an additional solicitor's fee.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.