By complaint, the defendants, husband and wife, were charged with causing the delinquency, dependency, or need of supervision of their seven year old son Jason, Alabama Code Section 12-15-13 (1975), in that they "failed to provide for said child's educational benefits as required by the Alabama Compulsory School Attendance Law". Alabama Code Section 16-28-3
(1975). A jury found the defendants guilty and declined to assess a fine. The trial court sentenced Mr. Hill to six months' imprisonment, three months of which were to be served in the county jail with the remaining three months suspended for twelve months. Mrs. Hill was sentenced to four months' imprisonment with one month being served and the remaining three months being suspended for twelve months. The suspended sentences of both defendants were contingent on their future good behavior including their causing Jason to attend school in compliance with the Alabama Compulsory School Attendance Law.
 I
The defendants contend that the Alabama Compulsory School Attendance Law violates their right to freedom of religion under both the State and Federal Constitutions.
It is undisputed and admitted by the defendants that they removed their seven year old child from the second grade in the public school system of Montgomery County because "the Lord told (them) to" in a "personal revelation". The defendants teach their son "to use his common sense" and "everything the Lord wants him to know". Mr. Hill admitted that he was not teaching his son reading, spelling, or mathematics. He was teaching him that world history was "evil". There was no program of vocational education.
The pertinent part of Alabama Code Section 16-28-3 (1975), reads as follows: "Every child between the ages of seven and 16 years shall be required to attend a public school, private school, denominational school, parochial school or be instructed by a competent private tutor for the entire length of the school term in every scholastic year." The Alabama Supreme Court, in Ogle v. Ogle, 275 Ala. 483, 486,156 So.2d 345 (1963), held that the object of the compulsory education law is that all children shall be educated to a minimum educational level. *Page 93 
In Wisconsin v. Yoder, 406 U.S. 216, 92 S.Ct. 1526,32 L.Ed.2d 15 (1972), the United States Supreme Court recognized the power of a state to impose reasonable regulations for the control and duration of basic education of its citizens.
 "Providing public school ranks at the very apex of the function of a State. Yet even this paramount responsibility was, in Pierce, [Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070] made to yield to the right of parents to provide an equivalent education in a privately operated system. . . . Thus, a State's interest in universal education, however highly we rank it, is not totally free from a balancing process when it impinges on fundamental rights and interests, such as those specifically protected by the Free Exercise Clause of the First Amendment, and the traditional interest of parents with respect to the religious upbringing of their children so long as they, in the words of Pierce, `prepare (them) for additional obligations'. 268 U.S., at 535, 45 S.Ct. at 573." 92 S.Ct. at 1532.
* * * * * *
 "(T)he very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." 92 S.Ct. at 1533.
* * * * * *
 "To be sure the power of the parent, even when linked to a free exercise claim, may be subject to limitation under Prince (Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944)) if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens." 92 S.Ct. 1542.
* * * * * *
 "It cannot be overemphasized that we are not dealing with a way of life and mode of education by a group claiming to have recently discovered some `progressive' or more enlightened process for rearing children for modern life." 92 S.Ct. 1543. (Emphasis added).
The record strongly indicates that accommodating the religious objections of the defendants by allowing them to continue the "education" of their child would result in the child's inability to be self-supporting or to discharge the duties and responsibilities of citizenship. If allowed to continue, concern must also be expressed over the serious potential for the impairment of the child's mental health. Not only would this type of education, if permitted of those who desired to exercise it, materially and substantially detract from the welfare of society, it has the potential for social disruption and broad abuse.
In Yoder, the Supreme Court held that the First and Fourteenth Amendments prevent a state from compelling Amish parents to cause their children, who have graduated from the eighth grade, to attend formal high school to age sixteen. The facts in that case are vastly different from those here presented. For the same reasons expressed in Yoder, we conclude that the Alabama Compulsory School Attendance Law does not violate any constitutional right of freedom of religion belonging to the defendants.
 II
Secondly, the defendants contend that their constitutional rights of due process were violated by the failure of the school attendance officer to give them written notice prior to bringing a criminal prosecution against them under Alabama Code Section 16-28-16 (1975). That section provides:
 "It shall be the duty of the county superintendent of education or the city superintendent of schools, as the case may be, to require the attendance officer to investigate all cases of nonenrollment and of nonattendance. In all cases investigated where no valid reason for nonenrollment or nonattendance is found, the attendance officer shall give written notice to the parent, guardian or other person having control of the child. In the event of the absence of the parent, guardian or *Page 94 
other person having control of the child from his or her usual place of residence, the attendance officer shall leave a copy of the notice with some person over 12 years of age residing at the usual place of residence, with instructions to hand such notice to such parent, guardian or other person having control of such child, which notice shall require the attendance of said child at the school within three days from date of said notice. In the event the investigation discloses that the nonenrollment or nonattendance was without valid excuse or good reason and intentional, the attendance officer shall be required to bring criminal prosecution against the parent, guardian or other person having control of the child." (Emphasis added)
Betty Ellis, the Attendance Supervisor with the Montgomery Board of Education, testified that she went to the defendants' home on January 8, 1979, and advised both defendants of the compulsory school attendance law. In response, the defendants informed Mrs. Ellis "(t)hat the world was coming to an end and they wanted Jason home with them". The defendants stated that they did not plan to enroll their son in any other school.
Mrs. Ellis testified that Mr. Hill telephoned her at her office one day, before the initiation of any criminal prosecution, and asked if she was going to sign a warrant against him and his wife. Mrs. Ellis told him that she was if Jason was not enrolled in school. Although not specifically admitted by the defendants this testimony was not contradicted. Mrs. Ellis testified that she did not give the defendants written notice that she intended to bring charges, but that she did send them Sections 16-28-2 and 16-28-3 of the Code. "I sent him what I thought was applicable." The two sections which were sent to the defendants define the purposes of Alabama's Compulsory School Attendance Law and specify the ages of children required to attend school.
In light of the conversations Mrs. Ellis had with the defendants, specifically her informing Mr. Hill that she would have a warrant signed against him and his wife if they did not enroll Jason in school, and the fact that she supplied the defendants with the applicable Code sections, we hold that her failure to give written notice in this case was harmless error at most. A.R.A.P., Rule 45. The defendants made it perfectly clear that they intended to keep Jason "at home" regardless of any state law of which they might be in violation. Error which has resulted in no substantial injury will not cause a reversal. Courington v. State, 20 Ala. App. 581, 104 So. 341, cert. denied, 213 Ala. 163, 104 So. 343 (1925).
After carefully considering the issues presented by the defendants and searching the record as required by law, we find no error which would prejudice their right to a fair trial. Therefore, the defendants' judgments of conviction are affirmed.
AFFIRMED.
All Judges concur.