Kenneth Hollen ("the father") and Deborah E. Hollen Conley ("the mother") were divorced in 1986. They were awarded joint custody of their minor son. From 1986 until 1990, the son lived with the mother in Kentucky during the school year and with the father during the summer. In 1990 until February 1994, the son began living with the father during the school year and with the mother during the summer. In February 1994, he resumed living with his mother during the school year and spending the summers with the father. In April 1999, when the son was 18, he again began residing with the father. Although the son had dropped out of high school in early 1999, he began taking welding courses at a community college in the fall *Page 923 
of 1999. He is also pursuing his GED certificate.
In June 1999, the father petitioned for a modification of custody and also sought both child support and postminority educational support. The mother filed a counterclaim in which she requested that the trial court compute the child-support arrearage owed to her by the father. The father was awarded custody of the son and child support[1] pending the final hearing. After a trial in September 2000, the court deemed the father's petition for custody and child support moot because the son had reached the age of 19 years, denied the father's request for postminority-educational support, and determined that the father owed $23,521.32 in past-due child support, including interest. The father filed a postjudgment motion, which the trial court denied; he then appealed.
The father first argues that the trial court erred by denying the requested postminority-educational support. The judgment indicates that the father failed to prove the necessary elements to entitle the son to an award of postminority-educational support. See Ex parte Bayliss,550 So.2d 986 (Ala. 1989). However, the father points out that the trial court, during the trial, indicated that postminority-educational support could not be ordered because the son had not graduated from high school and was not yet attending college. The mother contends that the son lacks the requisite aptitude for and commitment to education; therefore, she reasons, the trial court's denial of the father's request for postminority support should be affirmed.
The son is pursuing vocational training as a welder and is taking GED preparation courses. The record indicates that the son may qualify for a degree program if he earns his GED certificate before he completes the welding course. However, if the son does not earn his GED certificate, he will still earn certification as a welder. This court has extended the postminority-educational support first awarded in Ex parte Bayliss to both technical and vocational training, Barnes v. Barnes, 695 So.2d 1204, 1205
(Ala.Civ.App. 1997), and the completion of a high school education,Beavers v. Beavers, 717 So.2d 373, 377 (Ala.Civ.App. 1997), basing both extensions on public-policy grounds of fostering "`"a well-equipped, a well-trained, and well-educated citizenship"'" first discussed inBayliss. See Ex parte Bayliss, 550 So.2d at 994 (quoting Ogle v. Ogle,275 Ala. 483, 487, 156 So.2d 345, 349 (1963), quoting in turn Pass v.Pass, 238 Miss. 449, 458, 118 So.2d 769, 773 (1960)).
Although the son did not complete his high school education and, in fact, failed at least three grades during his elementary and junior high school career, the son has maintained a "C" average in the welding program. A "C" average has been determined to be sufficient to reflect the requisite aptitude for the requested education.[2] See Kent v. Kent,587 So.2d 409, 411 (Ala.Civ.App. 1991). We agree with the mother that the son's past academic performance has not been such that one would expect him to have an aptitude for or a commitment *Page 924 
to a college education. However, the son, thus far, has demonstrated a commitment to and an aptitude for technical training in welding. This, in our opinion, distinguishes this case from State ex rel. Hayes v. Hayes,620 So.2d 49, 51 (Ala.Civ.App. 1993), in which this court affirmed a trial court's decision not to award postminority-educational support to a child whose academic performance had been "`consistently abysmal'" and who had "`shown absolutely no aptitude or inclination for post-secondary education of any kind, either academic or technical.'"
In light of the trial court's apparent misconception concerning whether postminority-educational support could be awarded to the son because he was not pursuing a college education, we reverse the trial court's judgment insofar as it denies the requested support, and we remand with instructions that the trial court consider whether the father has proven the requirements of Ex parte Bayliss and its progeny.[3] If the trial court concludes that an award of postminority-educational support is warranted, it may tailor that award to the requested education; for example, it may restrict the term of such support (i.e., for no more than two years) or it may include only those costs associated with the pursuit of welding certification as opposed to the pursuit of a college degree.
The father also argues that the court erred by adopting the mother's computation of his child-support arrearage, which, he alleges, was calculated improperly for several reasons. Chief among the father's complaints is that the mother's computations include compounded interest.[4] After reviewing the mother's computations, we conclude that the judgment awarding the mother a $23,521.32 arrearage does include compounded interest. Although Alabama law requires that interest on past-due child-support payments be assessed, the law does not permit the use of a compounded-interest formula. See Campbell v. Campbell,827 So.2d at 111, 115 (Ala.Civ.App. 2001). The mother improperly used a compounded-interest formula in calculating the father's arrearage.
After reviewing the calculations, we have also determined that the mother's calculations do not properly compute the interest due on each child-support payment the father missed. Under Alabama law, child-support payment "installments become final judgments as of the date due." Osbornev. Osborne, 57 Ala. App. 204, 206, 326 So.2d 766, 767 (Ala.Civ.App. 1976). Because "judgments for the payment of money bear interest from the date of rendition" "it follows that such [child-support] judgments would bear interest from due date." Osborne, 57 Ala. App. at 206,326 So.2d at 767. Therefore, to properly calculate interest on an arrearage, one would have to compute the interest due on each installment from its due date.Id. The mother's calculations did not.
The father also argues that he was due credits pursuant to the language of the November 5, 1999, pendente-lite order *Page 925 
("November 1999 order"), which reads, in pertinent part:
 "That [the mother] shall be required to pay to the [father] the sum of $75.00 per week as support for the minor son . . . beginning April 26, 1999; however, [the mother] shall not be required to pay said $75 per week to the [father] but [the father] will be given credit toward any arrearages owed by the [father] to the [mother] until such time as [the minor son] shall reach the age of 19 years, so long as [the minor son] is residing with the [father] and remains in school."
After the trial, the court wrote a memorandum to the parties' attorneys in which it outlined what further evidence it believed was needed to resolve the issues presented. In that memorandum, the trial court reminded the parties that the arrearage calculation "must take into consideration the provisions of the November 5, 1999, agreed-upon order."
Our review of the mother's calculations reveal that she credited the father for the $75 per week from November 11, 1999, to April 10, 2000. Her calculations do not comply with the November 1999 order because she did not credit the father with the $75 per week from April 26, 1999, to November 10, 1999. The mother also failed to include as a credit one-half of the school expenses the father argued he had paid and for which he introduced evidence at trial. The father presented receipts showing he had expended $1,348.94 for books and welding supplies. The mother had credited the father with only $478, less than half the amount of the educational expenses the father submitted.
In addition, the father argues that the mother failed to incorporate the terms of an alleged 1997 agreement between the parties concerning the amount of child support the father was to pay. According to the father, the parties agreed to reduce his child-support obligation to $30 per week. He points out a letter in the record indicating that the mother's attorney agreed that the parties had negotiated an agreement, but that the agreement had not been reduced to writing. Thus, he argues, based on Ala. Code 1975, § 34-3-21, the mother's attorney bound the mother to the alleged agreement.
Although § 34-3-21 does discuss an attorney's authority to bind his client, the agreement sought to be enforced must, according to the statute, be in writing or be entered into the minutes of the court. The mother points out that the father's own evidence proves that the alleged agreement was not in writing and that it was not approved by the court. Without a writing or an entry into the minutes of the court evidencing the agreement, there is no basis for enforcing the alleged agreement.See Ex parte Kiely, 579 So.2d 1366, 1367 (Ala.Civ.App. 1991) (citing Ala. Code 1975, § 34-3-21); accord Proffitt v. Cochran, 742 So.2d 188,189 (Ala.Civ.App. 1999). We cannot hold the trial court in error for failing to enforce the alleged agreement.
The father's final argument concerning the child-support-arrearage calculation is that the mother failed to credit him with the amount of child support the mother should have paid during the years the son lived with the father. He argues that the trial court intended such a result based upon a comment by the trial court during the trial and the language of the trial court's memorandum to the parties, as quoted below:
 "The Court: So, what I'll do, I'll give credit for the time the child was with his father based upon the same support that was ordered."
 "4. I will give the . . . father credit for the three (3) years the child lived *Page 926 
with his father less 3 months in the summer during that time. Also credit for the summer months during the years the child was with the . . . mother but spent summers with father."
The mother argues that the trial court intended to credit the father dollar-for-dollar the amount he was to pay in child support during those three years but that the trial court could not have imposed upon the mother a duty to have paid child support for those years. We agree. Although the trial court was permitted to modify child support retroactive to the date the petition for modification was filed, seeState ex rel. Nathan v. Nathan, 680 So.2d 339, 342 (Ala.Civ.App. 1996), it could not order that the mother pay child support for previous years in which the father had been ordered to pay child support. To allow it to do so would permit it to modify the prior judgment; the modification of past-due child-support payments is not permitted under Alabama law. SeeFrasemer v. Frasemer, 578 So.2d 1346, 1348 (Ala.Civ.App. 1991) (explaining that a trial court cannot release or discharge past-due support payments, but that it may award a credit against any arrearage). The trial court did not err by failing to award the father a "credit" in an amount equal to what the mother's child-support obligation would have been had she been ordered to pay child support during those years the son resided with the father.
Because the arrearage computation erroneously includes compounded interest, fails to properly compute interest on each past-due installment, and fails to properly award credits under the November 1999 order, we must reverse the trial court's judgment insofar as it awards a $23,521.32 child-support arrearage. We remand the case for the trial court to properly credit the amounts due to be credited pursuant to the November 1999 order and to properly compute the interest due on the arrearage.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
[1] The mother was ordered to pay $75 per week in child support; however, the order did not require the mother to make payments to the father. Instead, the order required that the father receive credits against his child-support arrearage in the amount equal to the mother's child-support obligation.
[2] "Aptitude," as used in the context of postminority-educational support, has been defined as "an ability to comprehend the course subject matter in such a way as to make at least average grades upon examination." Kent v. Kent, 587 So.2d 409, 411 (Ala.Civ.App. 1991).
[3] Although whether the son is attending the program "full-time" or not is disputed, such a consideration is not relevant to whether postminority-educational support should be awarded, but instead is a necessary restriction on such an award. See Kent, 587 So.2d at 413.
[4] The mother argues that the father failed to raise this issue in the trial court, which, she says, precludes this court from considering it on appeal. However, the trial court's award of $23,521.32, including interest, is a factual finding that the calculation of the arrearage and interest is correct. Accordingly, the father was not required to raise the issue in a postjudgment motion to preserve the issue for our review.Ex parte James, 764 So.2d 557, 559 (Ala. 1999).