The Coffee Circuit Court entered a final judgment divorcing Jessie B. Cotter ("the father") and Donna F. Cotter McCrummen ("the mother") on February 29, 2000. There were two children born of the parties' marriage, a son and a daughter. The mother was awarded custody of the children, and the father was ordered to pay child support in the amount of $1,200 per month.
In August 2004, the mother filed a petition to modify the divorce judgment, seeking postminority educational support for the parties' son. The father filed an answer and counterclaim, denying that he should be responsible for postminority educational support and requesting that the court modify the amount of child support he was obligated to pay each month, because the parties' son had reached the age of majority. After an ore tenus proceeding, the trial court entered a judgment modifying the father's child-support obligation and, among other things, requiring the father to pay postminority educational support for the parties' son. The father filed a postjudgment motion, which the trial court denied. The father appeals, contending that the trial court erred in ordering him to pay postminority educational support. We affirm. *Page 464 
 Standard of Review
This court has outlined the standard of review for cases involving postminority educational support:
 "When a trial court hears ore tenus evidence, its judgment based on facts found from that evidence will not be disturbed on appeal unless the judgment is not supported by the evidence and is plainly and palpably wrong. Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App. 1990). Further, matters of child support are within the sound discretion of the trial court and will not be disturbed absent evidence of an abuse of discretion or evidence that the judgment is plainly and palpably wrong. Id."
Spencer v. Spencer, 812 So.2d 1284, 1286
(Ala.Civ.App. 2001).
 Facts and Discussion
The law surrounding the determination of postminority educational support has been well developed in Alabama. InPenney v. Penney, 785 So.2d 376 (Ala.Civ.App. 2000), this court stated:
 "The Supreme Court of Alabama set out certain factors for the trial court to consider when ruling on a petition for postminority support. See Ex parte Bayliss, 550 So.2d 986 (Ala. 1989). Bayliss clearly specifies those factors that shall, and those that may, be considered by the trial court when it is deciding whether to order support for postminority college education. In an award of postminority educational support for a child of divorced parents, the trial court `"shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education."' A.L. v. B.W., 735 So.2d 1237, 1239 (Ala.Civ.App. 1999); Thompson v. Thompson, 689 So.2d 885, 887 (Ala.Civ.App. 1997) (quoting Ex parte Bayliss, 550 So.2d 986, 987
(Ala. 1989)). The court suggested that trial courts also should consider `the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance.' Id. at 987. The trial court must also determine if the noncustodial parent has `sufficient estate, earning capacity, or income to provide financial assistance without undue hardship.' Thrasher v. Wilburn, 574 So.2d 839, 841
(Ala.Civ.App. 1990). Undue hardship does not imply the absence of personal sacrifice, because many parents sacrifice to send their children to college. Id.
 "Following Bayliss, this court has held that the trial court must set reasonable limitations on the parent's responsibility for postminority education support, because a failure to do so may impose an undue hardship on the paying parent. See Manning v. Manning, 744 So.2d 919, 922
(Ala.Civ.App. 1999); Hocutt v. Hocutt, 591 So.2d 881, 882 (Ala.Civ.App. 1991); Kent v. Kent, 587 So.2d 409, 412 (Ala.Civ.App. 1991). These limitations include (1) limiting the support to a reasonable period, (2) requiring the child to maintain at least a `C average, and (3) requiring that the child be enrolled as a full-time student. Manring v. Manring, 744 So.2d 919, 922
(Ala.Civ.App. 1999); Ullrich v. Ullrich, 736 So.2d 639, 643 (Ala.Civ.App. 1999) (quoting Bahri v. Bahri, 678 So.2d 1179, 1181 (Ala.Civ.App. 1996)).
 "This court has further held that without legal evidence as to the amounts required for books and tuition or for actual costs of room and board, we cannot determine whether the sums a parent *Page 465 
is required to pay for postminority educational support would cause him undue hardship. Thrasher v. Wilburn, 574 So.2d 839, 841
(Ala.Civ.App. 1990)."
785 So.2d at 378-79.
It is undisputed that the mother filed for a modification of the divorce judgment before the son reached the age of majority. Specifically, in requesting postminority educational support from the father, the mother stated that the son had been accepted into the Pan Am International Flight Academy Program and would enter the Career Pilot Development Program in October 2004. The son was approved for a loan in the amount of $87,000 from Key Education Resources ("Key") to finance his enrollment at Pan Am. The mother testified at trial that the Pan Am International Flight Academy had been destroyed by a hurricane before the son's anticipated enrollment date and that, thereafter, the son had decided to use his loan from Key to attend Regional Airline Academy in DeLand, Florida. The son started school at Regional Airline Academy in January 2005, and he was still taking courses there at the time of the trial.
After hearing ore tenus evidence from both parties, the trial court found that the cost of the son's flight program exceeded $64,000, that the son had obtained a Key loan from Key for $87,000 to pay for the cost of the program "and to assist with room and board and living expenses," and that the "loan is to be paid in two hundred forty (240) monthly installments of $629.87 commencing on May 20, 2007." Based in part on those findings, the court ordered:
 "[S]hould [the son] successfully complete the Career Airline Pilot Program prior to January 31, 2007, then the [father] shall pay $300.00 per month beginning May 20, 2007 to be applied to the Key Alternative loan. Should [the son] fail to successfully complete the Career Airline Pilot Program the [father] shall not be responsible for post secondary expenses. In the alternative the [father] may make a one-lump sum payment toward the Key Alternative loan in the sum of $30,000 on or before May 20, 2007."
The father first contends that the trial court erred in awarding postminority educational support because, he says, there was "no evidence that the parties' son had the aptitude for education."
The son graduated from high school in May 2004. Upon graduation, his class rank was 43 out of 52, and his transcript reflected approximately a "C" average for his four years of high school. The son did not take either the ACT or the SAT. The mother testified that the son considered joining the military after he graduated from high school, but neither the Air Force nor the Marines would guarantee the son a position as a pilot, and, ultimately, he did not sign with either branch. Both the father and the mother testified that the son has "always" wanted to fly. Although Regional Airline Academy does not offer report cards or transcripts that indicate grades, the mother testified that the son was excelling in the program. In its judgment, the trial court found that the son was progressing on schedule for completion of the Regional Airline Academy program and that "based upon evidence and testimony that [the son] has excelled in the program . . . he has the aptitude for seeking the Career Pilot Training."
In Hollen v. Conley, 840 So.2d 921 (Ala.Civ.App. 2002), this court stated:
 "This court has extended the postminority-educational support first awarded in Ex parte Bayliss to both technical and vocational training, Barnes v. Barnes, 695 So.2d 1204, 1205 (Ala.Civ.App. 1997), and the completion of a high school education, *Page 466 Beavers v. Beavers, 717 So.2d 373, 377
(Ala.Civ.App. 1997), basing both extensions on public-policy grounds of fostering `"`a well-equipped, a well-trained, and well-educated citizenship'"' first discussed in Bayliss. See Ex parte Bayliss, 550 So.2d [986] at 994 [(Ala. 1989)] (quoting Ogle v. Ogle, 275 Ala. 483, 487, 156 So.2d 345, 349
(1963), quoting in turn Pass v. Pass, 238 Miss. 449, 458, 118 So.2d 769, 773 (I960))."
840 So.2d at 923. In Hollen, the son did not complete his high school education and failed several grades during elementary school and junior high school. Id. at 923. Despite the son's apparent lack of commitment to a college education, the Hollen court concluded that the son had "demonstrated a commitment to and an aptitude for technical training in welding" that would support an award of postminority educational support. Id. at 924.
In Barnes v. Barnes, 695 So.2d 1204
(Ala.Civ.App. 1997), this court upheld the trial court's decision to award postminority educational support when the child had not completed high school but had expressed a desire to attend school to learn to be a diesel mechanic.695 So.2d at 1205. In the present case, the son has a high school diploma and it is undisputed that he had a longstanding desire and interest in pursuing a career as a pilot. The mother testified that the son was excelling in his studies, and that testimony was not disputed or discredited. We conclude that the finding by the trial court that the son had the aptitude for the education sought is supported by the record and is not in error.
The father next contends that the trial court erred in awarding postminority educational support because, he says, the son is attending an unaccredited, private flight program. Specifically, the father argues that he should not be required to pay postminority educational support for the program because there is no evidence indicating that the son will have a license or certificate upon completing the program, because the training will probably not lead to the son's ultimate goal of becoming a pilot for Delta Airlines, which requires a college degree, and because the program is for-profit and out of state.
Contrary to the father's argument, evidence regarding Regional Airline Academy's Airline Career Program was presented; that evidence outlines what an average student will have achieved upon completion of the program, which includes obtaining a commercial license; multi-engine/instrument ratings; and certifications as a CFI (certified flight instructor), CFII (certified flight instructor with instrument rating), and MEI (multi-engine instructor). Although the mother and the father both testified that the son aspired to fly for Delta, and the father testified that the son would likely have to attain a college degree to fly for Delta, the father also testified that the son could be hired at a smaller airline after completing the program.
As discussed above, Alabama courts have approved awards of postminority educational support for technical and vocational training. See Hollen, 840 So.2d at 923; andBarnes, 695 So.2d at 1205. The reasoning therefor included the "public-policy grounds of fostering `"`a well-equipped, a well-trained, and well-educated citizenship.'"'" Hollen, 840 So.2d at 923.
The programs pursued by the children in Hollen andBarnes differ from the flight program of the son in the present case in that this program does not offer grades or reports to indicate progress. Although the technical and vocational schools in Hollen and Barnes
provided such progress reports, there is no mention in either case that the schools were "accredited." Furthermore, the flight program in the present case is similar to the programs in *Page 467 Hollen and Barnes in that it will allow the son to attain various licenses and certifications necessary in his chosen profession, and it will qualify him to find employment with an airline, whether a smaller private company or a major commercial airline, thereby providing the son with the potential to one day support himself financially and contributing to a "well-trained citizenship." We conclude that the trial court did not err in awarding postminority educational support based on the above considerations.
The father next contends that the trial court erred in awarding postminority educational support because, he says, there was no evidence of the costs of the flight program or, in the alternative, because the evidence of the costs of the flight program was conflicting.
During the trial, the mother testified that the cost of the flight program at Regional Airline Academy was the same as the cost of Pan Am International Flight Academy, where the son was originally enrolled and on which the amount of the Key loan was based. After the trial, the mother submitted evidence of the costs of the flight program at Regional Airline Academy. The enrollment agreements for the son at Regional Airline Academy list a total cost of $45,391 for the Airline Career Program and a combined cost of $24,495 for the Airline Transition Course and the Aircraft Type Rating Course. The enrollment agreements outline the costs of each program as well, specifying amounts for flight training, flight exams, written exams, ground school, and books and supplies. Based on the ore tenus evidence and the exhibits submitted, which outlined the program's costs and the amount of the Key loan used to finance the son's flight program, the trial court concluded that the cost of the program was greater than $64,000.
The Hollen court noted that it is appropriate for a trial court to tailor an award of postminority educational support to the requested education, including restricting the term of support or adjusting the support amount to cover the costs of the education requested as opposed to the costs of a college education. Hollen, 840 So.2d at 924.
In the present case, the mother testified that the estimated duration of the son's flight program at Regional Airline Academy was 42 weeks but that the time of completion was subject to change depending on factors such as the weather, which could affect the number of hours the son could fly for his training. In its judgment, the trial court made appropriate restrictions to its award of postminority educational support. First, the father would not be required to pay any postminority educational support whatsoever unless the son completed the program. The son's program did not offer report cards, so the court was precluded from regulating the son's progress. However, the trial court appropriately fashioned the award such that any assistance by the father would be required only if the son followed through with the program and completed all of its requirements. Second, the father was given two payment options. The first option would require him to contribute $300 each month beginning May 20, 2007, the date the son was required to begin repaying the Key loan; the second option allowed the father to make a lump-sum payment of $30,000 on or before May 20, 2007. Because the trial court found that the cost of the program was upwards of $64,000 and because it did not require the father to make any payments until May 2007, the options appear to be appropriately tailored for the type of education that the son is pursuing. *Page 468 
Based on the above, we conclude that the trial court did not err in shaping its award of postminority educational support due to a lack of evidence of the costs of the flight program.
Finally, the father contends that the trial court erred in its award of postminority educational support because, he says, it imposes an undue hardship on the father. However, the father does not argue that he cannot afford the payments ordered by the trial court. In fact, the father submitted his income tax returns for the years 2000, 2001, 2002, and 2003, which reflected yearly gross income amounts of $59,662, $67,639, $76,829, and $81,603, respectively. As part of the trial court's judgment, the father's monthly child-support obligation to the mother was reduced from $1,200 to $775 per month for the remaining minor child of the marriage because the son had reached the age of majority. The father has submitted no evidence to suggest that he cannot afford the amount of postminority educational support ordered by the trial court.
Rather, in support of his contention that the trial court's award imposes an undue hardship on him, the father argues that the cost of the program is unreasonably high and, therefore, that requiring him to pay the amount ordered as postminority educational support creates an undue burden on him. The father argues further that he is unduly burdened by the trial court's order because the mother is not legally required to assist the son in repaying the Key loan. Finally, in support of his argument that the trial court's order creates an undue hardship on him, the father asks why children of divorced families should have the luxury of having their father pay for almost one-half of the cost of an educational program, such as the son's flight program, when children of non-divorced families are not always afforded such a luxury.
The father argued in his brief that the cost of the flight school is unreasonable for an unaccredited, vocational program. Although we agree that the program is particularly costly in light of the short length of the program and in light of the fact that the program is not a four-year college, we conclude that the amount of the award is reasonable in the present case. First, there was evidence indicating that another flight school, which offered a similar program, was similarly expensive. Second, there was evidence submitted that offered a breakdown of the costs of the program, each of which, in isolation, appeared reasonable. Finally, the trial court placed narrowly tailored restrictions, specific to this case, on its order of postminority educational support; those included the requirement that the son complete the program before the father would incur any responsibility to contribute whatsoever, and the option of two different methods of payment for the father, one of which would substantially decrease the amount that he was required to pay. Given these restrictions, we conclude that the award of post-minority educational support in the present case was not in error with regard to the relationship of the costs of the program to the pursued course of study.
The father also questioned the trial court's order because it places a burden on him as a divorced father when, he argues, married parents are not required to finance their children's higher education. The Alabama Supreme Court first approved an award of postminority educational support in Ogle v.Ogle, 275 Ala. 483, 156 So.2d 345 (1963). Before reaching its conclusion that "a father may be required to contribute toward the college education of his minor child, who is in his mother's custody pursuant to a divorce *Page 469 
decree," 275 Ala. at 486, 156 So.2d at 348, theOgle Court cited portions of the father's brief that raised questions about the implications of awarding postminority educational support or ruling that a college education is a "necessary." 275 Ala. at 485-86,156 So.2d at 347-48. Among those concerns was the suggestion that ordering a divorced father to pay postminority educational support would entitle children of divorced parents to a college education, whereas parents who are not divorced are not required to finance their children's higher education. 275 Ala. at 485,156 So.2d at 347. In support of its decision to affirm the award of postminority educational support, the Ogle Court discussed the discrepancy between married and divorced parents and their obligation to pay for a child's education.275 Ala. at 488, 156 So.2d at 350. Specifically, the Court stated that "`parents, when deprived of the custody of their children, very often refuse to do for such children what natural instinct would ordinarily prompt them to do.'" 275 Ala. at 488,156 So.2d at 350 (quoting Esteb v. Esteb, 138 Wash. 174,184, 244 P. 264, 267 (1926)).
The father argued further that he was unduly burdened by the trial court's award of postminority support because it did not similarly bind the mother to contribute to the cost of the flight program. In Bayliss v. Bayliss, 575 So.2d 1117
(Ala.Civ.App. 1990), this court stated: "`The trial court may consider, also, the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance.'" Id. at 1120 (quoting Ex parteBayliss, 550 So.2d at 987). Then, in Turner v.Turner, 579 So.2d 1381 (Ala.Civ.App. 1991), this court discussed the fact that the mother in that case would have had more of her income available to offset the children's college expenses if the family had not been split by divorce, as two incomes rather than only the mother's singular income would have contributed to the payment of basic necessities for the mother and the children after the parents divorced.Id. at 1382. The combined reasoning of Ogle,Bayliss, and Turner leads us to conclude that ordering the father to pay postminority educational support for the son does not unduly burden the father even though the mother is not similarly required to contribute to the child's continued education.
Based on the above factors that the trial court could have taken into account in shaping its award of postminority educational support and the ore tenus evidence presented, we conclude that the award does not create an undue burden on the father and that, therefore, the trial court did not err.
The trial court's judgment is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs in the result, without writing.